MICHAEL O. JOSEPH, JR.,

          Plaintiff,

                                         Case No. 24-cv-1356-bhl

     v.

FRANK J. BISIGNANO
Commissioner of the Social Security
Administration,[1],

          Defendant.

## DECISION AND ORDER

Plaintiff Michael Joseph, Jr. seeks review of the final decision of the Commissioner of the Social Security Administration, denying his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §405(g). For the reasons set forth below, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND

On November 16, 2021, Joseph applied for disability insurance benefits alleging a disability onset date of May 17, 2021, when he was 40 years old. (ECF No. at 10-1 at 189.) After his claims were denied initially and on reconsideration, he requested a hearing before an administrative law judge (ALJ). (*Id.* at 91, 98, 101.) The ALJ held a telephonic hearing on February 21, 2024 and, in a March 14, 2024 decision, denied Joseph's disability claim, concluding that he was not disabled. (*Id.* at 76–85.) The ALJ found that Joseph had a severe impairment from lumbar spine degenerative disc disease with status post fusion. (*Id.* at 78.) As a result of this impairment, the ALJ also found that Joseph was restricted to sedentary work with a number of

---

[1] Frank Bisignano was confirmed by the U.S. Senate as the Commissioner of Social Security on May 6, 2025, and was sworn in on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

additional restrictions. (*Id.* at 79.) Because someone with these restrictions could still perform jobs that exist in the national economy in significant numbers, the ALJ determined that Joseph was not disabled within the meaning of the regulations. (*Id.* at 83–84.) On July 10, 2024, the Appeals Council denied Joseph's request for review of that decision. (*Id.* at 9.) Joseph now seeks judicial review pursuant to 42 U.S.C. §405(g).

## BACKGROUND

According to his application, Joseph was born on June 18, 1981 and is unmarried with five children. (*Id.* at 194–95.) He claimed disability as of May 17, 2021, due to a work-related injury suffered when a scaffolding wall struck him, causing him neck and lower back pain. (*Id.* at 193, 314.)

State agency physician consultants reviewed Joseph's claim and found that he had a history of low back pain, treated with an L5/S1 fusion, and that he was "generally improving" and capable of light work. (*Id.* at 56–57, 62, 70–72.) They opined that Joseph could occasionally lift 20 pounds and frequently lift 10 pounds. (*Id.* at 69.) They also concluded he could occasionally stoop (bend at the waist) and sit for approximately 6 hours in an 8-hour workday. (*Id.* at 59–60, 69–70.) His primary care physician, George Lessmann, D.O., opined that Joseph could perform 10 reps of reaching but needs to sit after 10 minutes of prolonged standing. (*Id.* at 1479.) Dr. Lessmann further concluded that Joseph must avoid prolonged sitting without shifting or changing position within 15 minutes, but he could occasionally walk up to 100 yards in 105 second increments and occasionally lift 10 pounds from waist to waist and 5 pounds from waist to shoulder (but no weight from waist to floor). (*Id.*) Dr. Lessmann also opined that Joseph should avoid bending, squatting, stairs, pushing, and pulling. (*Id.*)

During the hearing, Joseph testified that he sometimes feels "stabs through [his] body" and that he received injections that "worked a little while." He also confirmed that he would have another set of injections soon. (*Id.* at 26.) He testified that he could drive so long as he did not have the stabbing pain. (*Id.* at 27.) He also confirmed that he could cook simple foods, help with grocery shopping, and do light cleaning. (*Id.* at 34–35.)

In response to a hypothetical posed by the ALJ, a vocational expert testified about the jobs available to an individual who is limited to sedentary work, not capable of climbing ladders, rope or scaffolding, and limited on an occasional basis in terms of climbing ramps and stairs, stooping, crouching, kneeling, and crawling. (*Id.* at 42–43.) The expert testified that those limitations

allowed for positions as a call-out operator (17,000 jobs in the national economy), telephone information clerk (7,000), and paramutual ticket checker (5,000). (*Id.* at 43.) He also testified that those limitations permitted work as a survey worker or interviewer. (*Id.*) He explained that, according to the U.S. Department of Labor's *Occupational Requirement Survey* (ORS), 86.3% of these jobs are performed at the sedentary level, although the U.S. Department of Labor's *Dictionary of Occupational Title* (DOT) classifies this work as light. (*Id.* at 43–44.) He ultimately estimated that there were 10,500 positions available at the sedentary level. (*Id.* at 44.) Joseph did not object to this testimony. (*Id.* at 45–46.)

At step one of his analysis, the ALJ concluded that Joseph had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 78.) The ALJ next found at step two that Joseph had the severe impairment of lumbar spine degenerative disc disease with status post fusion. (*Id.*) At step three, the ALJ determined that none of those impairments met or equaled any of the agency's listings of impairments. (*Id.* at 79.) The ALJ then found Joseph had the residual functional capacity (RFC) to perform sedentary work with additional limitations: he "cannot climb ladders, ropes and scaffolds; and can do occasional stooping, crouching, kneeling, crawling and climbing of ramps and stairs." (*Id.*) At step four, the ALJ found Joseph could not perform his past relevant work. (*Id.* at 83.) At step five, however, the ALJ found there were a significant number of jobs in the national economy that Joseph could perform. (*Id.* at 83–84.) The ALJ therefore determined that Joseph was not disabled. (*Id.* at 84.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [a reviewing court] to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review." *Id.* at 1054 (cleaned up) (citations omitted). In reviewing the record, the Court does not displace the ALJ's judgment by reweighing evidence, resolving evidentiary conflicts, or deciding questions of credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Judicial review is deferential and is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). If substantial evidence supports the ALJ's disability determination, the decision must be affirmed, "even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023).

## ANALYSIS

Joseph challenges two aspects of the ALJ's decision. First, Joseph argues that the ALJ did not properly consider Dr. Lessman's opinion and therefore adopted an RFC that was unsupported by the evidence. Second, Joseph argues that the Commissioner has not met his burden of establishing that a significant number of jobs existed in the economy that he can perform. Neither challenge supports a remand, and the Commissioner's decision will be affirmed.

**I.     The ALJ Appropriately Weighed Dr. Lessman's Opinion and Supported Joseph's RFC With Substantial Evidence.**

Joseph argues that the ALJ improperly labeled Dr. Lessman's opinion as only "partially persuasive." The record confirms, however, that the ALJ thoroughly analyzed the evidence of Joseph's claimed disabilities, including the relevant medical evidence.

The ALJ determined that Joseph's statements about the intensity, persistence, and limiting effects of his symptoms were "not consistent with the medical evidence and other evidence in the record." (ECF No. 10-1 at 80.) He then walked through the record. He first explained that, after suffering a work-related back injury, Joseph initially underwent "conservative treatment," including pain medication and epidural injections, and subsequently underwent a L5-S1 lumbar spine fusion. (*Id.* (citing ECF No. 10-1 at 322, 336–37, 349, 958–59).) The ALJ explained that there was no indication of post-surgery failure, although Joseph continued to complain of pain and

walked "with a rigid slow gait at times," and the pain medication and injections were beneficial for pain management. (*Id.* (citing ECF No. 10-1 at 334, 958, 1004, 1006, 1012).) The ALJ further noted that Joseph:

> is in no acute distress, but on occasion he demonstrated some lumbar spine tenderness and an antalgic gait without the use of an assistive device. However, on other occasions, [Joseph] remained alert, cooperative, and demonstrated good bilateral upper and lower extremity range of motion, 5/5 strength in the bilateral knees, elbows, hand, and 4/5 bilateral hip extension with pain, intact sensation, no motor wasting, no gross neurological deficits, and positive pedal pulses.

(*Id.* at 81 (citing ECF No. 10-1 at 323, 964–65, 974, 1004, 1009, 1017, 1033, 1044, 1052).) When Joseph sought emergency treatment in October 2022, an examination revealed "general tenderness but a normal neck and back range of motion with a positive left straight leg raise, left knee tenderness, and a decreased left knee range of motion." (*Id.* (citing ECF No. 10-1 at 997, 1000, 1002–03).) On January 3, 2023, treating doctors examined Joseph and found that "[h]e was alert and oriented, had no edema, intact cranial nerves, no motor or sensory deficits, 5/5 strength, negative straight left raises, no cervical, thoracic, or lumber spine bony tenderness," although "there were paraspinous muscle spasms." (*Id.* (citing ECF No. 10-1 at 976–79).) The ALJ also noted that Joseph benefitted from physical therapy and pain medication, but that he occasionally did not take his medication, which exacerbated the stabbing pain he described. (*Id.* (citing ECF No. 10-1 at 955–56, 958, 33–34).)

The ALJ considered Joseph's admission that he could drive his children to and from school, tend to his personal care, prepare simple meals, perform some household chores, shop in stores twice a week, sit on his porch regularly listening to music, lift 25 pounds, and walk half a mile. (*Id.* at 82 (citing ECF No. 10-1 at 256–64), 34–35.) The ALJ also considered the stimulator implant Joseph was scheduled to receive in late February 2024 to help manage his pain. (*Id.* at 81 (citing ECF No. 10-1 at 970, 974, 976), 33.) Based on this evidence, the ALJ found that Joseph is restricted to sedentary work with various restrictions. (*Id.* at 82.)

The ALJ then considered the opinions of the state agency medical consultants (who recommended that Joseph was capable of light work) and Dr. Lessman (who included a number of additional restrictions) and determined that all three opinions were "partially persuasive" when considered in conjunction with the previously-detailed evidence. (*Id.* at 82–83.)

Joseph argues that the ALJ's "mere statement" that Dr. Lessmann's restrictions were not supported by the record is "vague and meaningless." (ECF No. 13 at 7.) This argument unfairly

minimizes the ALJ's analysis. As summarized above, the ALJ considered the medical records and hearing testimony in detail and then concluded that the records supported a finding that Joseph was restricted to sedentary work with various limitations. (ECF No. 10-1 at 80–82.) The ALJ then considered the findings of the state agency physicians and Dr. Lessman against the backdrop of the evidence and found both "partially persuasive:" in light of the record as a whole, the ALJ believed the state agency physicians minimized Joseph's condition while Dr. Lessman overstated it. (*Id.* at 82–83.) The ALJ's detailed analysis adequately supports his conclusion and makes clear he properly considered Dr. Lessman's opinions. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (an ALJ must provide "an accurate and logical bridge" between the evidence and his conclusions).

Joseph next argues that the ALJ failed to consider the supportability of Dr. Lessman's restrictions or that Dr. Lessman was Joseph's primary physician. (ECF No. 13 at 9–11.) Social Security regulations provide that when evaluating and articulating the persuasiveness of a medical opinion, ALJs should consider supportability, consistency, the medical provider's relationship with the claimant, any specializations, and any other factors that tend to support or contradict the opinion. 20 C.F.R. §416.920c(c)(1)–(5). Of these, supportability and consistency are the most important. *Id.* §416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . ."); *see also* 20 C.F.R. §404.1520c(b)(2). An ALJ's failure to properly consider and explain application of these factors to medical opinions in the record is reversible error. *See* e.g., *Maynard v. Saul*, No. 20-cv-677-wmc, 2021 WL 3362554, at *3–4 (W.D. Wis. Aug. 3, 2021); *Lenz v. Kijakazi*, No. 20-cv-1810-SCD, 2022 WL 154548, at *5–8 (E.D. Wis. Jan. 18, 2022).

Joseph argues that the ALJ failed to consider the supportability of Dr. Lessman's restrictions because he did not address the fact that Dr. Lessman relied on Joseph's physical therapy records and noted Joseph's ongoing pain complaints. (ECF No. 13 at 10–11.) This is incorrect. The ALJ spent extensive time reviewing Joseph's physical therapy records—which indicated that Joseph was happy with the results from physical therapy—and complaints of pain—which diminished with medication, injections, and physical therapy. (ECF No. 10-1 at 80–82.) As for Dr. Lessman being Joseph's primary physician, the ALJ *did* note that fact. (*Id.* at 82.) Moreover, the evidence Joseph wants addressed (an exam by Dr. Lessman detailing a 4/5 bilateral hip extension with pain), (ECF No. 13 at 11), was considered by the ALJ, (ECF No. 10-1 at 81).

Joseph also complains that various evidence supports his claim of disability and Dr. Lessman's limitations on sitting, standing, lifting, and reaching. (ECF No. 13 at 7–8.) But an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053–54 (citations omitted). An ALJ's decision should be affirmed when the ALJ minimally articulates the basis for his conclusions. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (the minimal articulation requirement is "an obligation that extends no further than grounding a decision in substantial evidence." (citing *Warnell*, 97 F.4th at 1053)). Because the ALJ's decision articulates the basis for his conclusion, Joseph's criticism fails.

Joseph next takes issue with the ALJ's discounting of Dr. Lessman's limitations because Joseph's testimony was labeled as inconsistent. (ECF No. 13 at 8–9.) Joseph argues that the ALJ failed to take into account that Joseph's ability to drive, cook, clean, tend to personal care, and sit while listening to music is limited to his "good days." (*Id.*) The record confirms the ALJ properly considered Joseph's subjective complaints.

An ALJ must consider a claimant's subjective statements about symptoms and limitations, *see* 20 C.F.R. §404.1529, however, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability[,]" 42 U.S.C. §423(d)(5)(A). The regulations provide a number of factors for assessing a claimant's statements about the intensity and persistence of his symptoms and how they limit his capacity for work. *See* 20 C.F.R. §404.1529(c). These factors include objective medical evidence, information from a claimant's medical sources about his symptoms, a claimant's daily activities, a claimant's course of treatment, inconsistencies between a claimant's statements, and other evidence. 20 C.F.R. §404.1529(c)(2)-(4). An ALJ is only required to give reasons for the weight given to a claimant's statements sufficient to provide a fair sense of how the ALJ assessed the claimant's testimony. *See* SSR 16-3p, 81 Fed. Reg. 14166, 14171 (Mar. 16, 2016). ALJs must consider a claimant's "own description or statement of . . . [his] physical . . . impairment(s)." SSR 16-3p, 82 Fed. Reg. 49462, 49463 (Oct. 25, 2017). This is a two-step process. First, the ALJ looks to "whether there is an underlying medically determinable physical . . . impairment(s) that could reasonably be expected to produce an individual's symptoms[.]" *Id.* Second, if there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.* Because an ALJ "is in the best

position" to make this credibility determination, reviewing courts will reverse it only if the determination is "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citations omitted); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023).

The ALJ followed these principles. In his decision, before addressing Dr. Lessman's opinion, the ALJ noted that Joseph's statements "concerning the intensity, persistence, and limiting effects" were "not consistent with the medical evidence and other evidence in the record." (ECF No. 10-1 at 80.) As previously noted, the ALJ pointed to multiple medical records indicating a good range of motion, full strength in his knees, elbows, and hands, nearly normal hip strength with some pain, intact sensation, no motor wasting, no gross neurological deficits, and positive pedal pulses. (*Id.* at 81.) The ALJ also considered Joseph's own testimony indicating that his condition improved when he received pain medication, injections, and physical therapy. (*Id.* at 80–81.) When evaluating the subjective symptoms analysis, the ALJ's credibility determination will not be reversed "as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) (citing *McKinzey v. Astrue*, 641 F.3d 884, 890–91 (7th Cir. 2011)). Joseph's contention that the ALJ's assessment of his subjective complaints was lacking does not withstand scrutiny. And any error that the ALJ may have made in evaluating Joseph's activities of daily living is harmless, as the ALJ provided a thorough evaluation of the medical evidence. Joseph has not shown that the ALJ's evaluation of his symptoms lacked substantial evidentiary support or was "patently wrong." *See Simila*, 573 F.3d at 517.

Finally, Joseph takes issue with the ALJ labeling his RFC as sedentary, insisting that the ALJ failed to explain what evidence supported Joseph's ability to sit for six out of eight hours during a workday. (ECF No. 13 at 11.) Joseph also complains that the ALJ's decision was unsupported by Joseph's testimony and Dr. Lessman's opinion. (*Id.* at 11–14.) These criticisms also fail. The ALJ found the state agency medical opinions to be "partially persuasive" when considered with the whole record, (ECF No. 10-1 at 82), and both opinions indicate that Joseph was capable of sitting for about six hours in an eight-hour workday, (*id.* at 59, 69.) As previously discussed, the ALJ properly explained why he discounted some of Dr. Lessman's testimony and found Joseph's testimony inconsistent. The responsibility for assessing a claimant's residual functional capacity resides with the ALJ, *see* 20 C.F.R. §404.1520c(a), and therefore, an ALJ is not required to rely on a particular physician's opinion or choose between the various opinions of

a claimant's physicians, *see Schmidt v Astrue*, 496 F.3d 833, 845–46 (7th Cir. 2007). Accordingly, Joseph's argument does not withstand scrutiny.

## II. Joseph Forfeited Any Argument that the Commissioner Improperly Relied Upon the Vocational Expert's Testimony.

An ALJ uses a five-step inquiry in determining whether a claimant suffers from a disability, with the last step evaluating "whether the claimant is capable of performing work in the national economy." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)); 20 C.F.R. §404.1520. The burden for the fifth step is on the ALJ to show that "there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (citing 20 C.F.R. §416.960(c)(2)). To meet this burden, the ALJ will rely upon a Vocational Expert, who testifies as to what work a claimant can perform and the prevalence of those jobs in the national economy based on statistics from "publicly available sources," "'information obtained directly from employers[,]' and data otherwise developed from their own 'experience in job placement or career counseling." *Biestek*, 587 U.S. at 100 (citing SSR 00–4p, 65 Fed. Reg. 75760 (2000)). A Vocational Experts' job number testimony is an estimate; they "are neither required nor expected to administer their own surveys of employers to obtain a precise count of the number of positions that exist at a moment in time for a specific job." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018).

The Social Security Administration often uses the DOT to perform this analysis, but the DOT does not provide estimates of the prevalence of these jobs in the national economy. *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023). Many Vocational Experts base their estimates on the U.S. Bureau of Labor Statistics' (BLS) *Occupational Employment and Wage Statistics* (OES), which contains annual employment estimates for 800 occupations. *Id.* The two are not directly comparable and require the Vocational Expert to convert the information from the OES system to the DOT system. *Id.* But the Vocational Expert in Joseph's testimony used data from the ORS to calculate the number of jobs available for a Survey Worker or Interviewer. (ECF No. 10-1 at 43–44.) The ORS is another product of the BLS; it provides job-related information regarding physical demands; environmental conditions; education, training, and experience; as well as cognitive and mental requirements for jobs in the U.S. economy. Occupational Requirements Survey, *U.S. Bureau of Labor Statistics*, https://www.bls.gov/ors/ (last visited March 31, 2026).

Joseph argues that additional sources, unmentioned by the Vocational Expert, contradict his testimony, and that the Vocational Expert testimony involved obsolete jobs and positions that require skills outside Joseph's abilities. (ECF No. 13 at 14–17.) Joseph cannot raise this issue now, however, because he never questioned the Vocational Expert's foundation or reasoning. As a result, the ALJ was entitled to accept the conclusion and Joseph's argument is forfeited. *See Fetting*, 62 F.4th at 338 (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016)). Joseph tries to excuse his forfeiture by insisting that administrative hearings for disability claims are nonadversarial. (ECF No. 22 at 8.) This is beside the point. Whatever the nature of the proceeding, Seventh Circuit precedent required Joseph to raise this issue before the ALJ.

Joseph also argues that the decision to object "may be in large part because of a competent legal strategy." (*Id.*) None of the cases he cites to support this proposition involve the review of social security disability or similar claims. (*Id.* (citing *Bryant v. Brown*, 873 F.3d 988 (7th Cir. 2017) (involving a petition for habeas corpus); *Hardamon v. United States*, 319 F.3d 943 (7th Cir. 2003) (involving a jury conviction for conspiracy to distribute cocaine)).) Indeed, given the Seventh Circuit's holding in *Fetting*, a failure to object to a Vocational Expert's testimony (when necessary) cannot be considered part of a competent legal strategy.

Joseph maintains that, because there is a lack of pretrial discovery, cross-examining a Vocational Expert can be difficult, and counsel may have been unaware of the objection until after the hearing. (*Id.* at 8–9.) In support of this position, Joseph cites *Britton v. Astrue*, 521 F.3d 799, 804 (7th Cir. 2008), which "recognize[d] that the lack of pretrial discovery in Social Security hearings can make the task of cross-examining a [Vocational Expert] quite difficult," and therefore "the data underlying a [Vocational Expert's] testimony must be available on demand." (*Id.*) *Britton* was overruled seven years ago by *Biestek*. *See* 587 U.S. at 99 (holding that a Vocational Expert's refusal to provide the data relied upon does not preclude her testimony from counting as "substantial evidence"). Moreover, even if *Britton* was good law, the record confirms that Joseph never asked for the data used by the Vocational Expert. Accordingly, Joseph's challenge based on the Vocational Expert's testimony is waived.

**CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 31, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge